STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of State of Vermont, }
Department of Buildings and }
General Services (re Northwest }  Docket No.  269-11-00 Vtec
State Correctional Facility) }
}

Decision and Order on Appellant= s Motion for Summary Judgment

Appellant State of Vermont appealed from a decision of the Development Review Board (DRB (formerly the Zoning Board of Adjustment - ZBA)) of the Town of St. Albans upholding two notices of violation issued regarding the Northwest State Correctional Facility (NWSCF). Appellant is represented by Assistant Attorney General William H. Rice, Esq.; the Town is represented by David A. Barra, Esq. Appellant has moved for summary judgment that the notices of violation should be overturned.

The following facts are undisputed unless otherwise noted.

The State owns and operates the Northwest State Correctional Facility (NWSCF) in St. Albans. The facility was originally constructed in 1969, and was converted to a medium security facility in 1975. The Commissioner of Corrections has established work programs for offenders, of which the Vermont Correctional Industries (VCI) is the subset of industrial work programs that take place within state correctional facilities, under authority of 28 V.S.A. ' 751.

The VCI building at issue in this appeal was originally known as the wood shop when it was constructed in 1982. It is a separate building from the automotive shop. The State obtained approval from the ZBA for the construction of the 60' x 80' steel frame, concrete block building in 1982. It first contained a furniture manufacturing, furniture stripping, and furniture finishing shop. The State obtained approval from the ZBA for the construction of an addition to the building in 1987. The State= s representative who presented the application to the ZBA at that time stated that the proposal would not increase the number of inmates at the facility and would not increase the amount of traffic. The furniture stripping operation was closed at some time before the furniture manufacturing operation was moved to the correctional facility in Newport in August of 1996. A A pack and ship@ mailing operation was then established in the space. In November of 1999 the capacitor assembly operation at issue in this appeal was established in the VCI building, in partnership with the York Capacitor Corporation. The A pack and ship@ operation continued to operate in reduced space until January 2001, when it was shut down.

In connection with the proceedings to obtain zoning and planning permits for another building, the automotive shop, in 1995, the Planning Commission requested the State to file a ten-year Master Plan for the NWSCF. The State did file a Master Plan in 1995 for the NWSCF.

The steps of the capacitor assembly operation performed at the NWSCF VCI building involve manual assembly and electronic spot welding of components and use of a pneumatic > spinning= machine to close the cans which contain the assembled components. The work is performed seated at workstations, supervised by a state employee and by a York Capacitor Corporation employee. Other state security staff visit the building on a regular basis.

The Zoning Administrator issued two notices of violation to the State of Vermont: one on July 28, 2000 for A conducting a production line in conjunction with York Capacitors of Winooski at the Northwest Correctional Facility without obtaining approval from the Zoning Board of

Adjustment;@ and a second one on August 3, 2001 for conducting the same activity A without obtaining [site plan] approval from the St. Albans Town Planning Commission,@ and without submitting an updated Master Plan.

In the appeal of those notices of violation to the ZBA/DRB, the Town charged the State a $100 filing fee, and required that the State notify adjoining landowners by certified mail of the hearing scheduled on the appeal.

The Town has authority to adopt zoning regulations except as specifically limited by the state zoning enabling statute. 24 V.S.A. ' 4401(b). Section 4409 is entitled A Limitations@ and provides with respect to state facilities such as the NWSCF that A unless reasonable provision is made for the location of@ such facilities in the zoning bylaw, state facilities A may only be regulated with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening requirements.@

As the Town of St. Albans has not made specific provision for the location of state facilities in its zoning bylaw, the aspects of the NWSCF which the Town may regulate are the listed physical and external attributes of the facility, not its internal use or occupancy. See, In Re: Northwest State Correctional Facility, Docket No. S 377-94 Fc (Franklin Superior Ct., March 15, 1995).

Of course, as discussed in City of S. Burlington v. Vermont Dept. of Corrections, 11 Vt. L. Week 219 (2000), the State would be bound by any conditions in any local permits it did not appeal, even if the municipal body had lacked jurisdiction to issue those local permits at the time. However, in the present case, none of the local permits applicable to the NWSCF requires the State to take the actions that are the subject of the two notices of violation.

The VCI building in which the capacitor assembly line is run was formerly known as the wood shop building. The State obtained zoning approval in 1982 to construct that building, and obtained zoning approval in 1987 to construct an addition to it. The 1982 application only describes the proposal as to A erect industrial building at Correctional Center,@ without specifying or committing the State to the particular type of industrial process to be proposed in the building. Both approvals fell within the scope of 24 V.S.A. ' 4409. The parties have not provided any zoning permits or written decisions of the then-ZBA showing any conditions clearly placed on either of these approvals. But even if the minutes of the two meetings at which the approvals were granted can be read as establishing any conditions at all, neither the 1982 nor the 1987 minutes can be read to require the State even to report to the Town any future changes in the type of industrial process to be carried on in the building, much less to require the State to apply[1] for approval of any future change in the type of industrial process that would be carried on within the building. Accordingly, no statutory provision or unappealed permit requires the State to apply for approval for a change in the industrial process to be carried on in the VCI building. Similarly, in the absence of any new construction, or any change that would implicate the parking and loading facilities under ' 4409, no statutory provision or unappealed permit requires the State to apply for site plan approval for a change in the industrial process to be carried on in the VCI building.

There is no question that the State had provided the Town with a Master Plan for the NWSCF on May 2, 1995. However, nothing in the Town zoning regulations, state statute, or any meeting of the Planning Commission or ZBA, discloses any authority for the Town to require the State to produce such a plan. Rather, it appears from allusions to the history of the Master Plan in the minutes of the Planning Commission meeting of June 6, 1995, that the Town had requested and the State had provided a Master Plan for the facility. In the course of approving the automotive shop in its meeting of that date, the Planning Commission appears to have adopted a motion stated as follows:

[T]he state will periodically update the submitted master plan, on an annual basis or more often if program growth, mission changes or major renovations are called for.

The proponent of the motion characterized it as: A [t]hat= s just asking the state to give us a revision to the master plan,@ and later stated: A If we don= t ask for this, we won= t get anything from them for ten years.@

The adopted motion appears to be merely a statement of intent: that the state will provide these updates. It is not stated as a requirement imposed by the Town as a condition of the construction of the automotive shop. Further, even if that statement can be characterized as a condition of construction of the automotive shop, nothing about it requires an update of the master plan whenever the State makes a program change to the choice of industrial process or processes to be carried on in the VCI building. Accordingly, summary judgment must be granted to the State on Questions 1, 2 and 11 of its Statement of Questions.

Just as the Court cannot charge the State a filing fee, the town cannot charge the State a fee for appealing a notice of violation to the ZBA or DRB, unless the State has made itself subject to such a fee, as in making payments in lieu of taxes. The State has not made itself subject to local zoning fees, and therefore summary judgment must be granted to the State on Question 9 of its Statement of Questions.

On the other hand, under 24 V.S.A. ' 4467 the board is only required to give public notice of the hearing, and to mail to the appellant a copy of that notice prior to the hearing date. Adjoining property owners are not required under ' 4467 to be personally notified by the board. It is within a town= s general power in administering its zoning regulations to require a project applicant or appellant to provide such notice to adjoining property owners.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant State= s Motion for Summary Judgment is GRANTED on Questions 1, 2, 9 and 11 of the Statement of Questions. The Town may regulate the NWSCF with respect to the attributes listed in 24 V.S.A. ' 4409, but it may not regulate the use to which those buildings are put unless a change in use changes those attributes (e.g., parking and loading requirements). Further, although the State has provided a Master Plan in 1995 for the NWSCF, and may have provided updates to it since that time, it is not required to do so by any Town regulation, state statute, or unappealed permit related to the VCI building. Both Notices of Violation are hereby vacated, concluding this appeal.

Done at Barre, Vermont, this 19th day of November, 2001.

_____
Merideth Wright
Environmental Judge

**Footnotes**

[1]   These minutes may be contrasted with the 1995 approval by the then-ZBA of another building, the automotive shop, which was approved "with the provision that its use be forever limited to automotive training or training of any other type, and with no other use allowed."